IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Bankruptcy No. 06-20074-JAD |
| SUSAN TOMCO, | ) | |
| | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| _____ | X | Related to Docket Nos. 2 & 19 |

**MEMORANDUM OPINION
CONCERNING THE DEBTOR'S ELIGIBILITY
PURSUANT TO 11 U.S.C. § 109(h)**

**I.
INTRODUCTION**

The matter before the Court concerns the above referenced debtor's eligibility to be an individual consumer debtor pursuant to § 109 of the United States Bankruptcy Code (hereinafter referred to as "the Bankruptcy Code"), as amended by the Bankruptcy Abuse Protection and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 (April 20, 2005) (hereinafter referred to as the "2005 Act"). The issue specifically before the Court is whether the debtor in this case has satisfied the credit counseling "briefing" provisions of the 2005 Act. Because the debtor failed to obtain the requisite pre-petition briefing within the 180-day time period immediately preceding the commencement of her bankruptcy case (and because she failed to even attempt to obtain the requisite credit counseling briefing from any source whatsoever during the relevant time period), the Court holds that the debtor is presently ineligible for Chapter 13 relief. Consequently, for the reasons set forth below, the Court has no choice but to enter an order dismissing this Chapter 13 case without prejudice.

## II.
## FACTS[1]

The debtor, Susan Tomco, is a single mother of three young children ages 7, 3 and 2, respectively. (Document No. 14 - Schedule I).  The debtor commenced this case by filing a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on January 7, 2006. (Document No. 1 - Voluntary Petition).

The circumstances surrounding the debtor's bankruptcy filing are not uncommon. The debtor was forced to seek bankruptcy protection because her residence was scheduled for a Sheriff's Sale due to mortgage foreclosure on January 9, 2006. (Document No. 2 - Certificate of Exigent Circumstances).  A review of the schedules of liabilities filed by Ms. Tomco in this matter indicates that the debtor's financial obligations consist predominantly of secured obligations with respect to her principal residence.  (Document No. 14 - Schedules D, E and F).   In fact, the schedules filed by the debtor reflect that the unsecured obligations of the debtor consist of no credit card debt.  Rather, the scheduled unsecured claims of the debtor include priority tax claims, claims of utilities, and a small sum due a local credit union. (Id.).  This bankruptcy case was therefore commenced in good faith by Ms. Tomco to save her home for the benefit of herself and her three young children.

---

[1] The Court takes judicial notice of the facts and circumstances surrounding the debtor's bankruptcy filing as set forth in the Court's file, including the statements made by the debtor in documents filed on her behalf. See Fed.R.Evid. 201; Nantucket Investors, II v. California Fed. Bank (In re Indian Palms Associates, Ltd.), 61 F.3d 197, 204-206 (3d Cir. 1995) (judicial notice of documents in court's file is permissible).  The Court specifically takes judicial notice of the statements made by the debtor located in the Court's file at the following Document Numbers: #1 (Voluntary Petition), #2 (Certificate of Exigent Circumstances), #6 (Motion to Extend Time to Complete Chapter 13 Filing), #7 (Order Setting Hearing on Certificate of Exigent Circumstances), #9 (Order Granting Motion to Extend Time to Complete Petition), #14 (Schedules of Assets & Liabilities and Statement of Financial Affairs), #15 (Chapter 13 Plan), #16 (Employee Income Records), #19 (Motion to Extend Time for Credit Counseling), #20 (Order Setting Expedited Hearing on Motion for Enlargement of Time to Comply With Credit Counseling Requirement), and #22 (Response and Objection of U.S. Trustee to Debtor's Certificate of Exigent Circumstances).

Shortly after the filing of the debtor's Chapter 13 bankruptcy case, the debtor timely complied with the Court's orders with respect to the filing of schedules, statements and other documents as required by 11 U.S.C. § 109, 11 U.S.C. § 521 and Fed.R.Bankr. P. 1007, with one notable exception. (Document No. 6 - Motion to Extend Time to Complete Chapter 13 Filing; Document No. 9 - Order Granting Motion to Extend Time to Complete Petition; Document No. 14 - Schedules and Statement of Financial Affairs; Document No. 15 - Chapter 13 Plan). This exception is the debtor's efforts under 11 U.S.C. § 109(h)(1) to obtain and receive from an approved, non-profit budget and credit counseling agency a "certification" stating that the debtor has completed a "briefing" from such agency that both outlined the opportunities available to the debtor for credit counseling and assisted the debtor in performing a related budget analysis.

The emergency nature of the debtor's bankruptcy filing (i.e., to stay the Sheriff's Sale and enjoin the foreclosure of the debtor's equity of redemption) precluded the debtor from obtaining the requisite pre-petition "briefing" as required by 11 U.S.C. § 109(h)(1). Therefore, on the petition date, the debtor timely filed with the Court a document captioned "Debtor's Certification Requesting Waiver of Pre-Petition Credit Counseling" (hereinafter referred to as the "Certificate of Exigent Circumstances"), which set forth the reasons why this debtor could not obtain the pre-petition "briefing" required by the 2005 Act. (Document No. 2 - Certificate of Exigent Circumstances).

The Certificate of Exigent Circumstances was signed by the debtor, and states, in pertinent part, as follows:

> Debtor hereby requests a waiver of the pre-petition credit counseling required by 11 U.S.C. § 109(h) and certifies as follows:
>
> 1. I have an emergency situation that requires me to file bankruptcy. My

emergency situation is: My residence is scheduled to be sold at Sheriff's Sale on Monday, January 9, 2006 at 9:00 A.M.

2. ~~(a) I have requested credit counseling services from an approved agency, but was unable to obtain the services within five days from the time I requested it.~~

OR

   (b) I have requested credit counseling services from an approved agency but I could not obtain the services before the bankruptcy petition had to be filed. The reason for the emergency filing of the petition is described in Paragraph 1.

3. I will obtain credit counseling within thirty days of my bankruptcy petition.

WHEREFORE, the Debtor respectfully requests waiver of the pre-petition credit counseling requirement.

Respectfully submitted,

/s/ Susan Tomco

The Certificate of Exigent Circumstances filed by the Debtor did not identify or disclose the dates and times when the debtor requested a Section 109(h) "briefing" from an approved credit counseling agency. The Certificate of Exigent Circumstances also failed to identify (a) the manner in which the debtor contacted the credit counseling agencies, (b) the names of the agencies actually contacted by the debtor, and (c) whether the agencies contacted by the debtor, if any, were able to provide the requisite "briefing" within five (5) days of the debtor's alleged request. Given these deficiencies, the Court *sua sponte* determined that the debtor should be afforded an opportunity to demonstrate to the Court that the debtor's Certificate of Exigent Circumstances is satisfactory under applicable law. The Court therefore scheduled a hearing on the debtor's certification. (Document No. 7 - Order Setting Hearing on Certificate of Exigent Circumstances).

Because the Court had similar concerns with respect to certificates of exigent

circumstances filed in at least nine (9) other unrelated  bankruptcy cases filed in this district,[2] the Court consolidated the debtor's hearing on this matter with the hearings scheduled in the other similar cases and instructed that the U.S. Trustee for Region 3 appear and be heard.  The U.S. Trustee ultimately filed in this case (as well as in the other 9 cases) a lengthy objection to the debtor's Certificate of Exigent Circumstances.   In connection with the U.S. Trustee's objection, the U.S. Trustee also requested that the Court dismiss Ms. Tomco's case contending that Ms. Tomco is ineligible to be a consumer debtor pursuant to the 2005 Act's revisions to Section 109 of the Bankruptcy Code.

On February 6, 2006, and after the scheduling of the hearing on the debtor's Certificate of Exigent Circumstances, the debtor also filed with the Court a Motion for Extension of Time for Filing of Certificate of Credit Counseling. (Document No. 19 - Motion to Extend Time for Credit Counseling).   Pursuant to the motion for extension, the debtor sought what amounted to a 65 day extension of time (measured from the petition date) to obtain the credit counseling "briefing" required by the 2005 Act.  (Id.).  Given the questions regarding the efficacy of the debtor's Certificate of Exigent Circumstances, the Court did not grant the debtor's motion to extend and instead held the motion to extend over for hearing for February 14, 2006, which was the hearing date set by the Court to consider the merits of the debtor's Certificate of Exigent Circumstances. (Document No. 20 - Order Setting Expedited Hearing on Debtor's Motion to Extend Time for Credit Counseling).

---

[2] The cases are: In re Kromel, Bankruptcy No. 05-50482; In re Johnson, Bankruptcy No. 06-20005; In re Halsaver, Bankruptcy No. 06-20060; In re Scott, Bankruptcy No. 06-20079; In re Bowles, Bankruptcy No. 06-20152; In re Kolleck, Bankruptcy No. 06-20195; In re Juergen, Bankruptcy No. 06-20447; In re Eddy, Bankruptcy No. 06-20205; and In re Peoples, Bankruptcy No. 06-20207.  Based on the record developed at the hearing, five of these other nine cases (i.e., In re Johnson, In re Halsaver, In re Kolleck, In re Juergen, and In re Eddy) have been commenced by individuals who are presently ineligible to be "debtors" pursuant to 11 U.S.C. § 109(h) and will be dismissed by separate order of the Court.

On February 14, 2006, the Court conducted an omnibus hearing on both the various certificates of exigent circumstances at issue and the U.S. Trustee's objections thereto. At the hearing, the debtor and her counsel were afforded the opportunity to supplement the record.   At the hearing, the debtor (through counsel) orally corrected or modified the Certificate of Exigent Circumstances by acknowledging that the debtor in this case contacted no credit counseling agency prior to the commencement of this bankruptcy case. Apparently, the debtor's lack of knowledge or confusion of the law (coupled with the imminence of the Sheriff Sale necessitating the emergency bankruptcy filing) impeded the debtor's ability to procure the requisite briefing. Under these circumstances, the Court is called upon to determine whether the Certificate of Exigent Circumstances filed by the debtor, and modified at the hearing, is "satisfactory" pursuant 11 U.S.C. § 109(h). The conclusion of the Court in this regard directly affects whether Ms. Tomco is presently eligible to be a debtor entitled to pursue Chapter 13 relief.

## III.
## DISCUSSION AND ANALYSIS

The case before the Court relates solely to whether, under the facts and circumstances of this case, the credit counseling additions to the Bankruptcy Code operate to erect a barrier preventing Ms. Tomco from presently obtaining emergency bankruptcy relief.  Unfortunately, the Court concludes that such a barrier has been erected rendering Ms. Tomco ineligible for Chapter 13 bankruptcy relief.

The 2005 Act was signed into law on April 20, 2005, thereby enacting the most sweeping changes to this country's bankruptcy laws since the Bankruptcy Code was adopted in 1978.  To a certain degree, the focus of the 2005 Act is the "belt tightening" or "means

testing" required for individual consumer debtors to obtain a discharge in bankruptcy. An additional focus of the 2005 Act, however, is consumer protection. Towards that end, the 2005 Act requires individual consumer debtors to complete pre-petition credit counseling briefings and post-petition financial education courses as a prerequisite to being eligible for bankruptcy relief in the first instance and as a condition for being eligible for a discharge at the conclusion of a bankruptcy case. See 11 U.S.C. § 109(b)(identifying pre-petition counseling "briefing" requirements for debtors to be eligible to be consumer debtors under the Bankruptcy Code in the first instance); 11 U.S.C. § 727(a)(11)(setting forth the post-petition instructional course requirement for debtors to receive a discharge in Chapter 7); and 11 U.S.C. § 1328(g)(setting forth the post-petition instructional course requirement for debtors to receive a discharge in Chapter 13).

The 2005 Act amends § 109 of the Bankruptcy Code by adding sub-paragraph (h) which states that "an individual may not be a debtor" eligible for bankruptcy relief unless the individual received "an individual or group briefing (including a briefing conducted by telephone or on the internet)" administered by an "approved nonprofit budget and credit counseling agency" in the district in which the petition is filed. See 11 U.S.C. § 109(h)(1). Pursuant to § 109(h), this briefing is generally required to be completed by the debtor during the 180-day time period immediately preceding the filing of the petition. Id.

The effect of Congress revising the Bankruptcy Code to now require credit counseling as a condition to bankruptcy relief is profound. Under the new statutory regime, putative debtors are now forced to seek alternative methods of dealing with their financial problems prior to filing for bankruptcy protection. By virtue of its passage of the 2005 Act, Congress made its general policy choice known in that debtors are now expected to be proactive.

Congress has determined that bankruptcy should not be the first place where an individual consumer debtor turns for help. <u>See</u> <u>H.R. Rep. No. 109-31</u>, pt.1, at 4 (2005), <u>reprinted in</u> 2005 U.S.C.C.A.N. 88, 90-91 ("there is a growing perception that bankruptcy relief may be too readily available and is sometimes used as a first resort, rather than a last resort").  The effect of this legislation is that bankruptcy is a remedy of last resort for the honest but unfortunate debtor. <u>Id</u>.  The new provisions to the Bankruptcy Code are thus intended to force individuals to obtain education and counseling regarding both the economic consequences of filing for bankruptcy and the non-bankruptcy alternatives available to the debtor to rebuild his or her financial health. <u>See also</u> <u>H.R. Rep. 109-31</u>, pt. 1 at 2, <u>reprinted in</u> 2005 U.S.C.C.A.N. 88, 89 ("[the bill] requires debtors to receive credit counseling before they can be eligible for bankruptcy relief so that they will make an informed choice about bankruptcy, its alternatives, and consequences").

As a practical matter, the Court recognizes that a number of honest, but unfortunate, debtors have limited resources and education.  This Court, as well as others, recognize that consumer debtors facing eviction or mortgage foreclosure are not meeting with lawyers trying to figure out what to do well in advance before they file for bankruptcy relief.[3]  The reason why the average consumer debtor does not first meet with a lawyer well in advance of a bankruptcy filing is obvious.  Prior to sliding into bankruptcy, the unfortunate consumer debtor is usually having discussions with his or her mortgage company or landlord in an effort to obtain a forbearance of some sort.[4]  The debtor usually is either

---

[3] <u>See</u> <u>Frustrated Judges Vent in Opinions</u>, BCD News and Comment (LRP Publications, February 14, 2006).

[4] <u>Id</u>.

pounding the pavement in an attempt to refinance existing debt so that monthly payments can be made  more affordable or, alternatively, is knocking on doors in an effort to obtain a higher paying job (or even a new job if the debtor was unemployed).[5]  In any event, the average consumer debtor devotes most of his or her time and effort attempting to accumulate the needed funds to become current with creditors.  As the consumer is in dire financial straights, the debtor has little or no disposable income for counsel because the debtor is using what little funds he or she has to pay for family expenses such as housing, utilities, groceries, and clothing.

As the typical  consumer debtor's insolvency becomes exacerbated, the consumer debtor has no idea what the law requires under these circumstances.  The end result is that the honest but unfortunate consumer debtor is placed in an even worse situation.  Not being sophisticated in the law, the honest debtor is caught by surprise by the nuances of the credit counseling briefing provisions of the 2005 Act and finds that bankruptcy relief may be beyond his or her reach.[6]

Unfortunately, in this case Ms. Tomco is a consumer debtor who was caught off guard by the 2005 Act and she did not obtain the requisite pre-bankruptcy credit counseling.  As a result, the U.S. Trustee now urges the Court to dismiss Ms. Tomco's bankruptcy case.

An examination of the 2005 Act reveals that the statute's credit counseling briefing

---

[5] Id.

[6] This Court has found no legislative act of Congress (whether in the Bankruptcy Code, the Fair Debt Collection Practices Act, 15 U.S.C.A.§§ 1692a et seq., or otherwise) which requires foreclosing creditors to deliver notice to a debtor reminding him or her of the pre-bankruptcy credit counseling requirements imposed by the 2005 Act.

prerequisites are not absolute.  In the 2005 Act, Congress did recognize that some individual consumer debtors may have circumstances which preclude such debtors from obtaining a credit counseling briefing prior to filing for bankruptcy protection.  For example, the 2005 Act carves out a safe harbor exemption for individuals who suffer from "exigent circumstances" that "merit a waiver" of the pre-petition briefing requirements.  11 U.S.C. § 109(h)(3).[7]

In instances where a debtor qualifies for an "exigent circumstances" exemption, the 2005 Act provides that the debtor is not required to obtain the pre-petition credit counseling briefing as a condition for being eligible for bankruptcy relief in the first instance.  Rather, the debtor suffering from "exigent circumstances" that "merit a waiver" may nonetheless be eligible for bankruptcy relief if the debtor promptly obtains a credit counseling briefing upon the commencement of the case.  In such circumstances, the 2005 Act requires that the debtor obtain and complete the credit counseling briefing within 30 days of the petition date, and such 30 day window may be extended by the court for up to an additional 15 days for cause shown.  See 11 U.S.C. § 109(h)(3)(B).

The U.S. Trustee nonetheless challenges whether Ms. Tomco has adequately invoked

---

[7]  The exigent circumstances safe harbor provision of the 2005 Act states as follows:

> (3)(A) Subject to subparagraph (B), the requirements of paragraph (1) shall not apply with respect to a debtor who submits to the court a certification that –
>> (i) describes exigent circumstances that merit a waiver of the requirements of paragraph (1);
>> (ii) states that the debtor requested credit counseling services from an approved nonprofit budget and credit counseling agency, but was unable to obtain the services referred to in paragraph (1) during the 5-day period beginning on the date on which the debtor made that request; and
>> (iii) is satisfactory to the court.

11 U.S.C. § 109(h)(3)(A).  The 2005 Act also contains a blanket exemption for individual debtors who are incapacitated, disabled, or on active military duty in a combat zone. 11 U.S.C. 109(h)(4).  The exemption provisions of Section 109(h)(4) are not implicated in the matter *sub judice*.

the exigent circumstances exception.  To qualify for the exemption under 11 U.S.C. §
109(h)(3), the 2005 Act requires that the debtor first certify[8] to the court that "exigent
circumstances" exist and that those circumstances "merit a waiver" of the pre-petition
briefing requirements. See 11 U.S.C. § 109(h)(3)(A)(i).  The plain language of the statute
provides that any debtor seeking to fall within the exigent circumstances safe harbor must
also certify to the court that (1) the debtor (prior to the commencement of the bankruptcy
case) requested credit counseling services from an approved nonprofit budget and credit
counseling agency, and (2) the debtor was unable to obtain the services of such an agency
during the 5-day period beginning on the date upon which the debtor made the request.
See 11 U.S.C. § 109(h)(3)(A)(ii).  The 2005 Act also contains a catch-all requirement and
requires that the certification submitted by the debtor must be "satisfactory" to the court.
See 11 U.S.C. § 109(h)(3)(A)(iii).

Because the statutory language of 11 U.S.C. § 109(h)(3)(A) is written in the
conjunctive, it is clear to the Court that each of the three statutory predicates set forth in
11 U.S.C.§ 109(h)(3)(A)  must be present in order for Ms. Tomco to successfully fall within
the exigent circumstances safe harbor. See In re Graham, 336 B.R. 292, 296 (Bankr.
W.D.Ky.).  Otherwise, the Court is powerless to grant an exemption from the pre-petition
counseling briefing requirement imposed by the 2005 Act. In re Sosa, 336 B.R. 113, 115
(Bankr. W.D. Tex. 2005); In re Watson, 332 B.R. 740, 747 (Bankr. E.D. Va. 2005).

Turning to the requirements of 11 U.S.C. § 109(h)(3)(A), it appears that Congress has
bestowed upon the bankruptcy courts the role of gatekeeper because the legislation requires

---

[8] It should be noted that the document filed must be a proper "certification."  See In re Miller, 336
B.R. 232 (Bankr.W.D.Pa.), for a discussion of this Court's opinion as to what constitutes a "certification"
for purposes of the 2005 Act.

that any certificate of exigent circumstances filed by a debtor must be "satisfactory" to the court. 11 U.S.C. § 109(h)(3)(A)(iii).  Congress has in effect told debtors and their counsel that the filing of a certificate of exigency is not a mere formality; either upon the court's own motion or a proper motion by a party in interest there may be a review by the court of the adequacy of the debtor's certificate.

In terms of timing of the court's review, allowing the issue of whether or not an individual consumer (such as Ms. Tomco) falls under the "exigent circumstances" safe harbor to linger until a plan is confirmed or until a discharge is contemplated is a waste of time, energy and economic resources for both the Court and all parties in interest. It is this Court's opinion that a determination of the adequacy of the Certificate of Exigent Circumstances at hand is proper at this stage of the case (i.e., at the outset).  Indeed, if a creditor or other party in interest had failed to timely and promptly ask the Court for a review of the merits of the Certificate of Exigent Circumstances, such party could conceivably be barred from later challenging the debtor's eligibility pursuant to doctrines of waiver, estoppel, or *res judicata*. In re Ross, ___ B.R. ___, 2006 WL 349654, *5 (Bankr. N.D. Ga. 2006).

The U.S. Trustee does not dispute the fact that Ms. Tomco's bankruptcy case was precipitated by a creditor's efforts to judicially foreclose on Ms. Tomco's homestead. Neither the U.S. Trustee nor this Court disputes the conclusion that such circumstances constitute "exigent circumstances" for purposes of 11 U.S.C. § 109(h)(3)(A)(i).  The U.S. Trustee, however, argues that the presence of these circumstances does not "merit a waiver" of the credit counseling pre-requisites set forth in the statute.  The U.S. Trustee contends that because Ms. Tomco had several weeks of advance notice of the foreclosure sale, Ms.

-12-

Tomco had ample time to procure the credit counseling required by the 2005 Act but made no attempt to obtain it. On this basis, the U.S. Trustee suggests that Ms. Tomco's bankruptcy filing is deficient, does not "merit a waiver," and must be dismissed regardless of whether Ms. Tomco was aware of the credit counseling briefing requirements imposed by the new statute. The U.S. Trustee appears to urge that the Court adopt a *per se* rule which provides that ignorance of the law is irrelevant to the calculus as to whether a given debtor's exigent circumstances "merits a waiver" of the credit counseling briefing provisions of the 2005 Act. This Court is unwilling to adopt the *per se* rule advocated by the U.S. Trustee.

In the 2005 Act, Congress granted to the bankruptcy courts broad discretion to determine whether a debtor's certificate of "exigent circumstances" is both "satisfactory" and "merits a waiver" of the pre-petition credit counseling now required by the Bankruptcy Code. In re Dixon, ___ B.R. ___, 2006 WL 355332, *3 (8th Cir. BAP 2006). The broad discretion accorded to the bankruptcy courts by the plain language of the new legislation is consistent with the longstanding notion that bankruptcy courts are courts of equity. Pepper v. Litton, 308 U.S. 295, 304 (1939) ("[c]ourts of bankruptcy are, for many purposes, essentially 'courts of equity,' and their proceedings are inherently proceedings in equity"); U.S. v. Energy Resources Co., Inc., 495 U.S. 545, 549 (1990) (remarking that bankruptcy courts are courts of equity).

The focus under sub-paragraph (i) of § 109(h)(3)(A) is <u>not</u> whether a putative debtor hypothetically had enough time to obtain the briefing required by the 2005 Act, but rather the focus of the inquiry is a subjective one. Namely, the inquiry is whether the debtor was actually precluded by his or her circumstances from obtaining the briefing. This is a fact

-13-

specific inquiry into the good faith efforts of the debtor to comply with the credit counseling requirements of the Bankruptcy Code. The debtor's knowledge of the law (or lack thereof) may be relevant here. This is not to say that a debtor may simply stick his or her head into the sand and do nothing. However, there is no bright line rule guiding a bankruptcy judge in this endeavor. How well educated are the debtors? What is their financial situation? Did the debtors have the ability to seek counsel at an earlier stage of the insolvency, but chose to not do so for reasons that are unacceptable to the court? Did any of these or other circumstances render the failure to obtain the pre-petition credit counseling beyond the reasonable control of the debtors? These are the sorts of questions that must be addressed by the Court on a case-by-case basis under 11 U.S.C. § 109(h)(3)(A)(i).

In Ms. Tomco's case, the Court does not have to make a determination as to whether Ms. Tomco's circumstances "merit a waiver" of the credit counseling briefing provisions of the 2005 Act. The Court reaches this conclusion because the undisputed record is that Ms. Tomco failed to comply with the provisions of 11 U.S.C. § 109(h)(3)(A)(ii).

The plain language of sub-paragraph (ii) of Section 109(h)(3)(A) requires, as a condition of debtor eligibility, that the debtor certify that he or she requested credit counseling services from an approved nonprofit budget and credit counseling agency during the 180 day time period prior to the commencement of the bankruptcy case, but was unable to obtain the credit counseling briefing during the 5-day period beginning on the date on which the debtor made that request.

In this case, the Certificate of Exigent Circumstances filed by Ms. Tomco did not identify or disclose the dates and times when the debtor requested a Section 109(h) "briefing" from an approved credit counseling agency. The Certificate of Exigent

Circumstances failed to identify (a) the manner in which the debtor contacted the credit counseling agencies, (b) the names of the agencies actually contacted by the debtor, and (c) whether the agencies contacted by the debtor, if any, were able to provide the requisite "briefing" within five (5) days of the debtor's alleged request. In addition, subsequent to filing the Certificate of Exigent Circumstances, it was acknowledged that the debtor contacted no approved credit counseling agency whatsoever before she petitioned for relief. Under these circumstances, the debtor's Certificate of Exigent Circumstances is deficient and Ms. Tomco is ineligible to be a "debtor" by operation of 11 U.S.C. § 109(h). In re Sosa, supra.; In re Watson, supra.

Because Ms. Tomco is presently ineligible to be a "debtor," the U.S. Trustee requests that the Court dismiss Ms. Tomco's bankruptcy case. The debtor opposes dismissal, arguing that the enforcement of the 2005 Act's credit counseling provisions will unconstitutionally deprive the debtor of access to the bankruptcy courts. Alternatively, Ms. Tomco opposes dismissal of the bankruptcy case contending that a remedy of something less than full-fledged dismissal (i.e., striking the petition) is a sufficient sanction for the debtor's inability to comply with the credit counseling provisions of the 2005 Act.

The debtor's opposition to the U.S. Trustee's motion to dismiss is not surprising. The 2005 Act contains significant changes to the automatic stay provisions of the Bankruptcy Code. In essence, these changes render the automatic stay of 11 U.S.C. § 362 not so automatic in cases involving "serial" bankruptcy filers. By way of example, revised Section 362(c)(3)(c) of the Bankruptcy Code provides that a bankruptcy case is presumptively not filed in good faith if, among other things, the debtor was a debtor in more than one previous case pending within the 1-year period immediately prior to the

commencement of the debtor's case. Ms. Tomco surely would like to avoid having this "one strike" against her for purposes of Section 362(c)(3) of the Bankruptcy Code, and this is most certainly one of the predominant reasons why she opposes the U.S. Trustee's motion to dismiss.

The "not-so automatic stay" concern of the debtor, however, is tempered somewhat by the fact that the "not in good faith" presumption imposed by Section 362(c)(3)(c) of the Bankruptcy Code can be rebutted. The statute expressly provides that the presumption may be rebutted by clear and convincing evidence of, among other things, a "substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case . . ." 11 U.S.C. § 362(c)(3)(C)(i)(III). The fact that a debtor was ineligible to be a "debtor" in a prior case is germane to whether the presumption has been adequately rebutted under this section of the Bankruptcy Code. In any event, the Court concludes that the debtor's Section 362(c)(3) concerns are irrelevant to whether this Court should dismiss Ms. Tomco's bankruptcy case.

The Court determines that the objections of the debtor to dismissal are without merit. From a constitutional sense, courts have held that "the requirement of credit counseling as an element of an individual to be eligible for bankruptcy relief does not appear to burden a fundamental right." In re Watson, 332 B.R. at 746.

In U.S. v. Kras, the United States Supreme Court was confronted with the issue of whether the conditioning of bankruptcy relief upon the payment of various court filing fees violates the Constitution. U.S. v. Kras, 409 U.S. 434 (1973). In rejecting the debtor's arguments, the Supreme Court in Kras held that imposing the fees as a condition to discharge was indeed constitutional, and held that "there is no constitutional right to obtain

-16-

a discharge of one's debts in bankruptcy." <u>Kras</u>, 409 U.S. at 446.   Under these circumstances, the Supreme Court held that the debtor's Fifth Amendment right of due process, including equal protection, was not abridged. <u>Id</u>.

This Court finds that the 2005 Act's imposition of credit counseling as a condition to bankruptcy relief is analogous to the filing fee conditions approved by the Supreme Court majority opinion in <u>Kras</u>.  Writing for the majority, Justice Blackmun wrote:

> Bankruptcy is hardly akin to free speech or marriage or to those other rights, so many of which are imbedded in the First Amendment that the Court has come to regard as fundamental and that demand the lofty requirement of compelling governmental interest before they may be significantly regulated.  Neither does it touch upon what have been said to be the suspect criteria of race, nationality or alienage.  Instead, bankruptcy legislation is in the area of economics and social welfare.  This being so, the applicable standard, in measuring the propriety of Congress' classification, is that of rational justification.

<u>U.S. v. Kras</u>, 409 U.S. at 446.  The rational basis for the 2005 Act's credit counseling provision is Congress' expectation that debtors be proactive with their financial problems. The new provisions to the Bankruptcy Code are thus intended to force individuals to obtain education and counseling regarding both the consequences of filing for bankruptcy and the non-bankruptcy alternatives available to the debtor to rebuild his or her financial health. Ms. Tomco has not come forward with any evidence to suggest that the Congressional justifications for the credit counseling provisions of the 2005 Act are irrational. This Court therefore determines that there is a rational legislative basis for the 2005 Act's credit counseling provisions, and such provisions do not violate the Constitution.[9]

---

[9] The Constitution, Art I, § 8, cl. 4, merely authorizes Congress to "establish . . . uniform Laws on the subject of Bankruptcies throughout the United States."  The Constitution does not create a right of bankruptcy in and of itself.  Bankruptcy is a legislative remedy.  As a result, Congress may structure the

With respect to Ms. Tomco's request that the Court "strike the petition" as opposed to "dismiss" the debtor's bankruptcy case, the Court recognizes that most courts have chosen to simply dismiss a case filed by an ineligible debtor.[10]  The Court also recognizes that  a minority of other courts have instead implemented the practice of "striking" the petitions (i.e. having an effect of voiding the petition *ab initio*) in an effort to avoid the "one strike" consequences elucidated above.[11]

Most of the courts rejecting dismissal of the ineligible debtor's bankruptcy case have included some commentary in their opinions as to why striking a petition is a preferred remedy; conversely, the courts dismissing petitions have offered little reason or explanation as to why they have done so.  This Court agrees with its brethren supporting dismissal of these types of cases where the petitioner is ineligible to be a "debtor," but feels compelled to elaborate on why given the flux of case law under the 2005 Act.

Courts rejecting dismissal in favor of the remedy of "striking" the petition of an ineligible debtor rationalize such result on equitable grounds, as well as Section 301 of the Bankruptcy Code.

The equitable factor supporting striking a petition is naturally the avoidance of the "one strike" (or even the "two strike" or "multiple strike") filing presumptions contained in Section 362 of the Bankruptcy Code.  According to one court, "dismissal for failure to seek

---

contours of the legislative remedy so long as such contours do not run afoul of other provisions of the Constitution.

[10] See e.g., In re DiPinto, __ B.R. __, 2006 WL 213721 (Bankr. E.D. Pa. 2006); In re Rodriguez, 336 B.R. 462 (Bankr. D. Idaho 2005); In re Sosa, supra., and In re Watson, supra.

[11]   See, e.g., In re Rios, 336 B.R. 177 (Bankr. S.D.N.Y. 2005) and In re Hubbard, 333 B.R. 377 (Bankr. S.D. Tex. 2005).

credit counseling achieves a result Congress intended to avoid; that is future limitation of debtor protection under [the 2005 Act]." Rios, 336 B.R. at 180.  The Rios court further stated that "Congress could have made failure to seek credit-counseling cause for dismissal under revised 11 U.S.C. § 707, but did not." Id.  Under these circumstances, the court in Rios concluded that dismissal of the bankruptcy petition of the ineligible debtor was not appropriate and opined that "striking" the petition was all that the court was required to do.

This Court respectfully disagrees with the Rios court.  This Court concludes that the plain language of Section 362 of the Bankruptcy Code is that if a prior case was commenced by a debtor, and if such prior case was pending in the 1 year period prior to the filing of the debtor's most immediate bankruptcy case, the presumptions set forth in Section 362 become operational.  Had Congress desired to include in Section 362 of the Bankruptcy Code additional exceptions, Congress could have done so.  Congress, however, did not do so and this Court will not re-write the statute.

It is true that, in the 2005 Act, Congress did not revise Section 707 of the Bankruptcy Code (as well as Sections 1112, 1208, and 1307) to add statutory ineligibility under Section 109 as an additional "cause" for dismissal of a bankruptcy case.  This inaction by Congress should not be construed as an alleged Congressional intent that cases filed by ineligible debtors should not be dismissed by the Court.  A plain reading of the statute supports this Court's view.

Section 707 of the Bankruptcy Code, as well as Sections 1112, 1208, and 1307, enumerate circumstances upon which a court may dismiss an individual consumer's bankruptcy case.  Each of these statutes do not plainly exclude from "cause" for dismissal

-19-

a debtor's ineligibility for relief.  The reason for Congress' failure to expressly include eligibility as an item of "cause" is apparent.   There is no need for it.

In terms of cause for dismissal, this Court is guided by Congress' statement in each of these sections of the Bankruptcy Code that cause for dismissal expressly "includes" the items enumerated therein.  Section 102 of the Bankruptcy Code provides that Congress' use of the term "includes" or "including" in the Bankruptcy Code is "not limiting." 11 U.S.C. § 102(3); see also In re Maide, 103 B.R. 696, 697 (Bankr. W.D. Pa. 1989).  Given this statutory backdrop, it is obvious that "cause" for dismissal of a bankruptcy case is not limited to the enumerated statutory list(s),[12] and a debtor's ineligibility for relief constitutes one such item of cause. In re Ross, supra.

Dismissal of a bankruptcy case filed by an ineligible debtor also is not demonstrably at odds with Section 301 of the Bankruptcy Code.  Section 301 of the Bankruptcy Code provides that a "voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." 11 U.S.C. § 301(a).

In the Rios case, the court concluded that because the debtor was ineligible for relief due to its failure to obtain credit counseling, no bankruptcy case was "commenced" and the matter was "stricken" as being *void ab initio* for want of jurisdiction.  It is this Court's view, however, that the word "may" in Section 301 has an expansive connotation.  In ordinary common parlance, the word "may" as used in the § 301 of the Bankruptcy Code means "might" or is meant to express a "possibility." See Random House Unabridged Dictionary

---

[12] Cf., In re Federal Mogul-Global, Inc., 348 F.3d 390, 401 (3d Cir. 2003)(adopting an expansive interpretation of the term "including" under § 328 of the Bankruptcy Code).

1189 (2d ed. 1993); see also In re Copper, 314 B.R. 628, 637 (6th Cir. BAP 2004).[13]  The

debtor in Rios, as in any bankruptcy case, had the possibility of being a debtor under the

Bankruptcy Code, but he had to obtain the credit counseling to be certain.

This Court is unable to accept the notion that Section 109(h) ineligibility impacts a

determination of whether a case was "commenced" and whether the Court's subject matter

jurisdiction has been invoked.  This Court holds that the operative event which triggers the

commencement of a bankruptcy case, and this Court's jurisdiction, is the filing of a petition.

This conclusion is consistent with the fact that neither Sections 109 and 301 of the

Bankruptcy Code, nor any other provisions in the Bankruptcy Code, make mention of

jurisdiction.  Jurisdiction is "granted" to bankruptcy courts through title 28, not title 11, of

the United States Code.  This Court's conclusion is also consistent with the decisions

reached in other courts which hold that Section 109 of the Bankruptcy Code is not

jurisdictional. See, e.g., In re Ross, 2006 WL 349654 at *3 - *5, and footnotes cited therein

(collecting cases).

Prudential reasons support the Court's conclusion that a case commenced by an

ineligible debtor is not *void ab initio*.  One such reason is the automatic stay, and the ability

of parties in interest to rely on it.  If a case filed by an ineligible debtor is *void ab initio*,

there would be no automatic stay whatsoever.  See Rios, 336 B.R. at 180, n. 2.

One of the fundamental purposes of filing of an individual consumer bankruptcy is

---

[13] The United States Supreme Court often uses dictionaries as a source of interpreting terms of art used in statutes.  See e.g., Buckannnon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources, 532 U.S. 598, 603, 121 S.Ct. 1835,  1839 (2001)(adopting Black's Law Dictionary definition of the term "prevailing party" as the clear meaning of the term); Branch v. Smith, 538 U.S. 254, 264, 123 S.Ct. 1429, 1437 (2003)(defining the term "enactment" using both Black's Law Dictionary and Webster's Dictionary).

the debtor's pursuit of a discharge.  One way in which the debtor's pursuit is augmented is through the breathing spell from creditor collection efforts that is afforded by the automatic stay.  While the automatic stay protects the debtor, it also protects creditors because the stay enjoins the collection efforts of creditors who are attempting to win the race to the courthouse.  A legal theory which enables creditors to unilaterally, and without court supervision, to nullify the stay gives rise to too much uncertainty than any creditor or debtor should be required to suffer.  This Court is unwilling to impose upon any debtor, or any of its creditors, the additional risk that, at a date subsequent to the petition date, a creditor could unilaterally ignore the stay in the absence of an order of this Court or an express statutory provision providing otherwise.

As one court noted, "[t]reating an ineligible debtor's case as filed and dismissing it avoids serious problems that treating a petition as *void ab initio* or as failing to establish jurisdiction creates." In re Ross, 2006 WL 349654  at *4.  This Court agrees with the Ross court and expressly adopts the following holding(s) in Ross:

> Especially in a jurisdiction such as this one with a high volume of individual filings, it is quite conceivable that administration of an individual's bankruptcy case might proceed despite § 109(h) ineligibility because the question does not immediately come to the attention of the court.  If such a case is *void ab initio*, it arguably follows that any actions during the administration of the case are ineffective- by definition, there was and is no case.  Although this might be welcome news to a preference defendant that could get its money back, the purchaser of estate assets from a trustee under § 363 would be justifiably unhappy at having the sale set aside.  Doctrines of waiver or *res judicata* provide potential legal basis for fair resolution of these problems if there is a case before the court; indeed, one treatise suggests that compliance with § 109(h) may be waived. 2 Alan N. Resnik and Henry J. Sommer, Collier on Bankruptcy ¶ 109.09[3] at 109-60 (15th ed. Rev. 2005)("Because eligibility requirements are not jurisdictional, they may be waivable by the court if the debtor made the unsatisfactory certification in good faith, and certainly should not apply if no entity moves to dismiss the case.").  But they may be unavailable if the case is void *ab initio*. And even if

bankruptcy courts can fashion doctrines to avoid unfair results in such *void ab initio* situations, the fact remains that substantial uncertainty will cloud every transaction related to a bankruptcy case. At a minimum, a careful purchaser of assets will need to add investigation of an individual debtor's eligibility to its due diligence checklist.

Id. At *5 (footnotes omitted).

This Court's conclusion that a bankruptcy filing by an ineligible debtor is not *void ab initio* is consistent with the provisions of the 2005 Act. The 2005 Act's amendments to Section 362 confirm that Congress did not view § 109 as being jurisdictional. The 2005 Act provides an exception to the automatic stay of Section 362(a) with regard to foreclosure of real property if the consumer is ineligible to be a debtor under § 109(g).[14] See 11 U.S.C. § 362(b)(21)(A).[15] If a bankruptcy filing of an ineligible debtor under Section 109(g) was *void ab initio* and did not result in the automatic stay, the amendments to Section 362(b) would not have been necessary. As Congress "is presumed to know the state of existing law when it enacts legislation," the enactment of additional exceptions to the automatic stay

---

[14] Section 109(g) of the Bankruptcy Code states as follows:

(g) Notwithstanding any other provisions of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if-

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g).

[15] Section 362(b) of the Bankruptcy Code carves out events which are not subject to the automatic stay. Unlike Sections 707(b), 1112, 1208, and 1307 of the Bankruptcy Code, Section 362(b) is worded narrowly and does not use the word "includes" or "including" as a predicate to its list of exceptions to the stay.

evidences the understanding of Congress that a bankruptcy filing in violation of Section 109 commences a case and results in an automatic stay. Id. at *3 (citing Cannon v. University of Chicago, 441 U.S. 677, 699 (1979)).

For all of these reasons, this Court reaches the same conclusion with regard to the effect of § 109(h) ineligibility as the conclusion reached by the court in In re Flores, 291 B.R. 44, 62 (Bankr. S.D.N.Y. 2003) with regard to Section 109(g) ineligibility.   Namely, a petition filed with the bankruptcy court commences a case under title 11.  The case thereby commenced is a case under title 11, unless and until the bankruptcy court determines that the debtor did not have the right to be a debtor.   If the bankruptcy court ultimately determines that an individual consumer is ineligible to be a "debtor," the court can dismiss the case and fashion such other relief as may be necessary to protect the rights of parties in interest.

*[Remainder of Page Intentionally Left Blank]*

# IV.
## CONCLUSION

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.  The decision before this Court is a difficult one.  Dismissal of this bankruptcy this may seem harsh, especially since the average debtor filing for protection is not aware of the nuances of the  pre-petition credit counseling provisions of the 2005 Act.  Nonetheless, the debtor in this case, Ms. Tomco, has failed to adequately comply with the pre-petition credit counseling briefing provisions of the 2005 Act, and her Certificate of Exigent Circumstances is unsatisfactory as a matter of law due to her non-compliance with the plain language of 11 U.S.C. § 109(h)(3)(A)(ii).  As the Court's equitable powers cannot be exercised in a manner inconsistent with the express provisions of the Bankruptcy Code, the Court has no choice but to dismiss Ms. Tomco's bankruptcy case.  Based on the foregoing, the Court shall enter an order consistent with this Memorandum Opinion which dismisses Ms. Tomco's Chapter 13 bankruptcy case.  Such dismissal shall be without prejudice to the right of the debtor to file another case at such time as she is eligible to do so under 11 U.S.C. § 109(h).  Such dismissal also renders moot the debtor's motion for extension of time to complete credit counseling.


Date: February 27, 2006          /s/ Jeffery A. Deller_____
                                 Jeffery A. Deller
                                 United States Bankruptcy Judge



cc:    Michael Geisler, Esquire (counsel to the debtor)
       Joseph Sisca, Esquire, Assistant U.S. Trustee